The next case for argument this morning is 23-2787, Society of the Divine World v. USCIS. Good morning, Mr. Pollack. Good morning. May it please the Court. I'm representing the plaintiff appellants who are all U.S.-based religious organizations, 501c3 tax-exempt organizations. Mr. Pollack, before we get to the merits, I just want to confirm that you are not appealing the district court's rulings on the INA, the equal protection, or the due process claims. We are not appealing the equal protection and the due process. We do have claims under the INA. They're sort of folded into the APA claims. Your opening brief did not mention the INA. How have you preserved those claims for appeal? Our intent was to retain the ultra-virus arguments. But where in your brief did you raise that? I believe that— I don't want you to waste your argument time on it. When you come back on rebuttal, you can let us know. But I looked very carefully and didn't see the INA mentioned in your opening brief at all. I'll take a look. Okay. All right. Don't use your argument time on that. We're fine arguing on the First Amendment and the Religious Freedom Restoration Act points because I think that those are strong as well. This court—well, the plaintiffs are asking for one thing, to be treated equally with nonreligious organizations. This court should reverse the district court because the challenged regulation excludes religious organizations from an important benefit, being able to concurrently file for their ministers. The exclusion of religious organizations from concurrent filing has had a traumatic impact on the plaintiffs. Some have lost ministers for years because they were complying with the rules and were counseled to send their ministers abroad. Some of them are still waiting for their ministers to return to the United States. And when people go to church or temple and the selected minister is not there, then the church is really not fulfilling its basic function. Mr. Pollack, does the record say anything about when the plaintiffs here are filing their I-365s compared to when they start working as ministers in the United States? Is this something the employers are doing for them immediately? Not always. Not always. A lot of religious organizations do their own research and their own sort of internal filing, but many do have attorneys that are assisting them. And timing-wise, how soon are the employers filing the I-365s in comparison to when the religious workers begin work at the employers? Is it something – when they start on day one, are they filing them? No, no. It looked to me like maybe they were waiting a couple of years before they actually filed the I-365. The religious workers, all of the ones mentioned in the complaints, were initially in the United States working on temporary nonimmigrant R1 status. R1. And the employers were, of course, assessing their ministry and making decisions at various times. The point of this case is that religious organizations are treated differently and unequally from business organizations. I'm trying to get – I understand your arguments here. I'm just trying to get a sense of the timeline. So religious organizations can file an I-360 petition at any time once they've identified someone as a prospective immigrant. And it sounds like it takes a couple years for them to do it so they can assess the ministers. Is that fair? Some of the declarants in the appendix have said that even five years is not sufficient for their particular mission. But given the realities of the R1, it really varies. And once those are filed, what's the general timeline that they're adjudicated? Is it fast, slow, or does it vary dramatically? It varies dramatically. Over time, it has been anywhere from a couple months to well over two years. Okay. But where we were just before is you were describing the injury to your clients. Yes. And so for standing, we, of course, do need to look at an injury in fact. Correct. We also need to look at redressability. Yes. And that's what I want to ask you about. Even if we agreed with you on injury, would a ruling in your favor really provide relief given that USCIS can still reject the applicant based on some other factor during the I-360 stage, the Form 360 stage? Again, the same considerations are in play with non-religious organizations filing for their employees. And so the adjustment of status statute contains a requirement that the applicant for adjustment of status be admissible to the United States. And so any adjustment applicant found inadmissible, let's say they have a criminal background or they have other characteristics in the grounds of inadmissibility, can be rejected ultimately. This case is about the right to file initially and have the ability to remain in the United States beyond the termination of the non-immigrant temporary status. So the thing is the exclusion of religious organizations is intentional. And it's clear that it is intended to put certain requirements on religious organizations that are not there for non-religious organizations. Although they are there for other types of folks within the EB-4 category. Correct. So the Iraqi Afghani translators or the employees of government embassies abroad, the native employees, so forth, so on. They too have the same restrictions. Well, not exactly. Okay. Most of the other residents of the EB-4 category are not employment-based at all. Many of them are outside of the United States who will not be applying for adjustment of status. Others just are, you know, they're in there. It's kind of a hodgepodge category. And this case really isn't about the EB-4 category versus other categories. It's about religious organizations' ability to access. But what I'm asking, I understand that. What I'm asking is are there not other folks in that EB-4 category who are suffering from the same handicap that you are describing your clients is suffering? And you started talking about, well, some are non-employment-based and some are abroad. Is there anyone else in that category similarly situated to your clients? No, there is not. The other persons in the EB-4 category are specific. Most of them are specifically exempted from the penalties of visa overstays or unauthorized employment. When you look at Section 1255C of the immigration law, it carves out immediate relatives of U.S. citizens and special immigrants of various types, but not religious workers. It's really only the religious workers that are treated differently and are forced to give up their ministry or face penalties for unauthorized employment. Does that answer your question, Your Honor? Yes, thank you. Okay. And the harm that you are claiming or the injury you are claiming is that these employees are treated differently in the application process and can't stay here if their R1 visa expires, like other workers. Not that they may ultimately not get a visa, but that's not what your alleged harm is. That's correct, Your Honor. But what I'm hearing is that it goes a little further, though. It's hindering the organization's ability to retain the religious ministers or leaders that their particular organization desires because of the hindrance put on them by not being able to concurrently file like other employers. That is part of our argument, Your Honor. It's the unequal treatment that we consider to be the harm, the primary harm, and I will also be addressing specifically what are the substantial burdens when we sort of move from the First Amendment claims to the RFRA claims. But it's clear that the intentional carve-out of the religious workers from concurrent filing is unequal treatment. And the only issue for this court really should be, is it justified or not? And we argue that it's not justified. The regulation is not neutral, and the government doesn't get the benefit of a rational basis test. They have to justify this exclusion. Mr. Pollack, and I know this was discussed in the briefing, but are you bringing a facial challenge, an as-applied challenge, or both? We're bringing an as-applied and a pre-enforcement challenge. Because your claim for relief looks much more like a facial challenge because you are asking for the court to order the defendants to accept all concurrent filings on behalf of any applicant. No, just religious organizations, Your Honor. But not just those who work for your employers, but you are asking to accept concurrent filing of the 360 and 485 for any applicant for whom an immigrant visa is available. That sounds more like a facial challenge to me. Well, we're not arguing that the regulation itself can't be applied to anybody. We are asking that religious organizations be included in it in order to protect their First Amendment rights. I'm reading from your complaint, your claim for relief looks more like a facial challenge because you're asking us to declare that the regulation violates the First Amendment and other provisions. Certainly as applied to the plaintiffs, Your Honor. So we may have stated it too broadly in the complaint, but to answer your question, we are bringing an as-applied challenge. Each and every day that there is an exclusion of religious organizations to concurrent filing, the benefit there is an ongoing harm. And if it's an as-applied, does it matter or does it render your claim moot that all of the individual employees here have received approval of their I-360s? No, it doesn't, Your Honor. Why not? Why doesn't that make it moot? Because the religious organization plaintiffs, as a matter of their course of operations, have religious workers, ministers who are working for them now in R1 status for whom the declarations in the appendix confirm that the individual plaintiffs have anywhere from 1 to 25 people who are in the system at the time that they provided their declarations, and they are filing I-360s as a matter of course. What's your response to your opponents who say, well, first of all, there were only six declarations? Well, there were nine, I believe, Your Honor. Okay. And vastly more plaintiffs, in your view. And the declarations say things like, we may continue, we plan to. In some respects, they are a little vague on plans. I don't think so, Your Honor. This is in the nature of how churches and religious organizations work. They have to be given a certain autonomy to make these decisions. And in, for example, the General Counsel's and Chancellor's Declaration for the Diocese of Peoria, Illinois, she identifies 20, I believe it was 25, and she says that they are in the process of applying for many of their I-360s. And isn't she one of the non-plaintiffs? That's a non-plaintiff declaration, if I recall. No, the Diocese of Peoria is a plaintiff, Your Honor. Okay. So, again, they've stated intent, and the cases have held that intent can satisfy the standard for standing. In this, the fact that the religious organizations are continuing to accept foreign-born ministers. I think the declaration from the Society of the Divine Word drills home that point. We might need to move to your next point regarding the second issue beyond the First Amendment. Although you are in your rebuttal time. Okay. Unless, if you have a question, Judge Parks. No, I don't. Just so you know, you are in your rebuttal time. I see that. Okay. So I'll try to get through the RFRA argument. The district court observed that the regulation limits the pool of available applicants, the pool of available ministers. And that itself is a substantial burden that takes away the religious organization's core function to select its own ministers without government entanglement. The analytical failure of both the district court and the Ninth Circuit in the Ruiz-Diaz case is that it doesn't consider the organization's ability to select and retain their minister. The regulation impedes that selection by not permitting the religious organization to concurrently file. Now, again, this court should apply strict scrutiny. And the defendants can't show a compelling interest because they do allow other employers to concurrently file. Other EB4 immigrants are relieved of the consequences of a failure of status. The rationale for exclusion of religious organizations is a pretext. And the USCIS now proposes that to extend concurrent filing to religious organizations at some time in the future. What also distinguishes this case is there is evidence in the record of invidious discrimination against religion. That includes exclusion from benefits, including, of course, concurrent filing. The expedited adjudications requests are routinely denied and no premium processing, which we discuss in the briefs. And one of the declarants, Robert Devine, refers to the deprioritization of adjudication for religious organizations as distinct from the prioritization of other petitioners' applications. So I'll reserve the rest of my time. Thank you. Thank you, Mr. Pollack. Mr. Goldsmith? Good morning. Good morning, Your Honor. Aaron Goldsmith on behalf of the government. Here, as a threshold matter, we don't get past standing because appellants have failed to demonstrate an injury that is both traceable and redressable. This case was decided at the summary judgment stage, and it was the burden of the appellants to put forward specific facts establishing standing under the particular circumstances of this case, and they failed to do so. You don't seem to dispute that they have alleged a concrete injury. You're just challenging whether or not it is imminent or traceable or redressable. Is that fair? I think that's correct. And to answer your questions earlier about how long it takes the agency to process, historically it's about six to seven months to process. The 360? Correct. But as they set forth in paragraph 30 of the Fourth Amendment complaint, beginning in the spring of 2020, those processing times ballooned, in their words, and they had a timetable explaining how it got up to over two years. And they do have a good point there, and I have a lot of empathy on that point. But I would just, to put it in context, we have a regulation that's been on the books since 2002. Then 18 years later, with the outbreak of COVID-19, they balloon, and then if you look at our website today, outward-facing website, the processing times are back to six months. So, and they were back to six months when this matter was before the district court. Let's dive into this standing a little more. Why isn't the fact that plaintiffs are saying they currently employ ministers who are on R1 visas, which are time-limited, they expire in five years, why isn't that sufficient to show imminence, imminent, you know, an injury is imminent? Well, I think something more is required under the particular circumstances of this case. And let me just say it's a little bit different from other types of immigration matters, and let me address why. Here, we're dealing with R1 workers who are already here, who are already being employed. So this is not a case where they're saying there's a delay, and as a result, I can't bring someone into the country. They're saying here, look, we're going to, in the future, petition for these R1 workers, and those petitions will not be adjudicated by USCIS in sufficient time for them, for the agency to then adjudicate either an application. But I think that's a little bit of a finer point. What I'm hearing this morning is that the same, I guess, the secular organizations are given to assess foreign employees, right? It's not being extended to the religious employers because they're not permitted to file concurrently the petition and the application. If given that same timeline, this desperate indiscriminatory practice would be eliminated if they could file concurrently. Well, first of all, part of it is there's different rules for different categories. And the fact that Congress set up different employment-based categories is not at issue in this case. They're not challenging Congress's authority to set up EB1, EB2, EB3 categories. Their challenge is to the agency's regulation. Their challenge is to the treatment. But specifically to the regulation, that it extends concurrent filing to 1, 2, and 3, but not 4 and 5. So that – but there's nothing that prevents a religious organization from filing, for example, an EB3 category and being treated exactly the same way as secular employees. So there's a – I know you're saying, well, but it's different. I understand, but the concern is they're not being treated on equal footing, which was the concern in Trinity Lutheran and some other cases. That's not exactly the case here. Now, Your Honor also had a question about facial versus as applied. And the way we see it is they conceded that it's a facial challenge in their response, ECF 68 pages 5 and 6, where they said the government is wrong and that they're providing cases dealing with the statute of limitations outside of the facial context. And then they say, but basically, in the alternative, if it were as applied, we would still win. So we think that's how they chose to frame it. So it's not just the prayer for relief. It's also how it was briefed below in district court. The district court, though, seems to have treated it as as applied. In some ways, yes. It's not expressed, but I understand your point. I'd also point out that I'd like to briefly address redressability. It's not simply that they're saying, look, we can't have our petitions adjudicated in sufficient time. There's no showing that if it were extended, if concurrent filing were extended to religious workers, that that would have any impact. And in fact, not only have they failed to provide specific facts showing that, they can't based on another statute, 1255A. So there are two reasons why they cannot file, religious workers cannot file concurrently. One is that the regulation, at least in the EB-4 category, because the regulation does not extend concurrent filing to the EB-4 category. That's what's being challenged in this case. But there's also another provision, 1255, that says you can't file an application for adjustment of status unless there's a visa immediately available. And immediate available is determined by looking to the Department of State's visa bulletin. And this bulletin shows that for the EB-4 category, there are no visas currently available. But why isn't the proper way to look at redressability here is to see they are asking just to be on the same footing as everybody else who submits their 360. So they're not asking that their ministers ultimately get legal permanent resident status always and forever. They just want to be at the same starting line as these secular employers, which gives them the chance, should visas be available, to get that relief. Why isn't that a proper way of understanding redressability? Which means you dispense with this, there are no visas available, or there might be other reasons USCIS might decline to award status, adjust status. Well, to answer your question, in terms of whether or not petitions or applications ultimately are going to be granted or not, I understand that's sort of a separate matter. As to whether or not they're on equal footing, I think you have to look at the practical consequences. That if there's two impediments to concurrent filing, and they're only challenging one of those impediments, then they don't have a redressable injury. It would be one thing at the motion to dismiss stage where there's a different standard, but here this case was decided at the summary judgment stage. Does 1255 only apply to EB-4? No, it's across the board. I'd like to move on, just briefly touch on statute of limitations. I mentioned the facial as applied. I'd also point out that this does not mean that there is no remedy available for individuals. They can, under the APA petition for rulemaking, under section 555E, and then if the agency says we're not going to change our regulations, they can challenge that decision. So, I think that's an important point. And then also, briefly with respect to First Amendment, this court has precedent that says you look to the program as a whole. St. John's Church says that you don't just pluck out one aspect of the program to challenge to see whether or not it poses a substantial burden. That's consistent with Block v. Davey, that the court says you look to the entirety of the program. They look to the entirety of the scholarship program to determine whether or not it imposed a special disability on religious entities. And I think that reasoning applies here. And as I mentioned earlier, this is different from Trinity Lutheran in that they are not being automatically and absolutely excluded from a program due to their religious character. They can participate. There's no coercion or sanction, no pressure to change their beliefs. That there are allegations that they're going to participate in future falls short of establishing that they are going to suffer a substantial burden. It's not as if they changed their beliefs that would make it easier for them to participate in the Religious Worker Program. To the contrary, without the religious beliefs, they couldn't participate in the Religious Worker Program. So it's not a special disability. It's an accommodation that Congress decided to make for religious entities. And that's what distinguishes this case from the cases that they cite and that they rely on. They briefly talked about the ministerial exception. And I think this court's precedent in the Illinois Bible about licensing requirements addresses that. And it shows why these types of processing regulations are neutral on the face. There's no evidence of targeting of religious employers or religious entities. It's not like in Carson, a situation in which the government is excluding religious observers from an otherwise available public benefit. And so for those reasons, we think that if you get past standing and the statute of limitations, the district court's analysis was correct. Just as the Ninth Circuit's analysis in Ruiz-Diaz was correct. And so for those reasons, if you get past those two threshold defenses, standing and statute of limitations, we believe the decision of the district court should be affirmed. I'm happy to answer any further questions. One more question, Mr. Goldsmith. On the question of the statute of limitations here, is there any reason we should wait for the Supreme Court's opinion in the Corner Post case before addressing that here? I don't think so. First, I understand why you might want to, just to have the benefit of that decision. But here, there was no Corner Post type argument advanced in district court. And then second, that dealt with the issue of what happens if you have a regulation that was promulgated on a certain date, but you didn't have an injury that accrued to a different date. They don't have evidence in the record that says, okay, this is a 2002 regulation, but we first, you know, filed a petition in 2015. And so that's when our claim accrued. There's not that type of, other than there's, I think one of the declarations, there was a suggestion that they've been participating for years. So for those reasons, the court has the option of waiting for Corner Post, but I don't believe it is necessary. I guess if we get beyond standing, and the question we have to ask under RFFA and First Amendment as well, is how does this practice of not allowing them to file concurrently not impact their ability to practice their religion? In a substantial way, if you're having to replace or there's no security that the priest or who you have before the congregation is going to be there for an extended period because they're not able to file these petitions and applications concurrently, how does that not substantially affect their ability to practice the religion? Well, Your Honor, I think you have to consider the procedural context which in this case was decided. It was decided at the summary judgment stage. So it was the burden of the appellants to come forward with evidence. And that's why I'm asking you because you won't have another chance to come back and answer that question. So I want to give you a chance to address it before you take your seat. So because it was at the summary judgment, there's no evidence in the record that it will have the impact that you have raised as a possible concern. I understand the concern, but there's no evidence that, for example, there is a particular situation in which because of the lack of concurrent filing, they won't get a decision on an application for adjustment status within the five years. And had there been concurrent filing, they would have gotten that decision. That's the evidence. That's the key piece of the puzzle that is missing here and why we think the decision of the district court should be affirmed if you get past standing. Thank you, Your Honor. Thank you. Mr. Pollack? Thank you, Your Honor. Judge St. Eve, we addressed the APA claims at pages 27 to 32 of our brief, both arguing that the district court erred in dismissing the APA claims. What about the INA? I know you addressed the APA. It was the INA claims that I didn't see in there. Well, the APA claims include that the regulation is ultra-virus, and that gets into counsel's argument that the regulation applies to all visa categories, and if that's the case, then concurrent filing should be extended to anyone in that regard. It doesn't exclude religious organizations, and it cannot exclude religious organizations because they have these special needs to maintain their ministry. As for the concurrent filing rule not creating a special disability, it does. In the 2008 rulemaking for religious workers, the government, USCIS, concedes that they are intending to carve out religious workers from other categories that enjoy concurrent filing, so there is special disability and targeting of religion in that sense. With that, I think plaintiffs can rest, unless you have other questions. Thank you, Mr. Pollack. Thanks to both counsel in this case. The court will take the case under advisement.